136 P.3d 297

**SCHWAN'S SALES ENTERPRISES, INC., Plaintiff–Respondent,**

v.

**IDAHO TRANSPORTATION DEPARTMENT, Defendant–Appellant.**

No. 31286.

Supreme Court of Idaho, Boise, February 2006 Term.

April 25, 2006.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, Idaho, for appellant. Michael D. Gaffney argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, Idaho for respondent. Larry C. Hunter argued.

JONES, Justice.

At about 10 o'clock one April evening in 2001, a Schwan's employee (named Forman) drove one of the company trucks past a stop sign and through the intersection of U.S. Highway 91 and Wicks Road[1] in Bingham County. His truck collided with another vehicle, and two people in the vehicle he hit were killed. Forman pleaded guilty to two counts of vehicular manslaughter. He was on company time when the accident occurred, and Schwan's settled with the decedents' parents. Schwan's then sued the Idaho Transportation Department (Department), Bingham County, and that county's road and bridge district for contribution, subrogation, and indemnification. The company alleged the defendants acted negligently in the placement of the stop sign and in the non-placement of a stop-ahead warning sign. A jury returned a verdict finding Schwan's and the Department each fifty percent liable. (Bingham County and its road and bridge district had by then been dropped from the lawsuit.) The Department moved for judgment notwithstanding the verdict or for a new trial, and the district court declined to grant either. The court later awarded attorney fees under Idaho R. Civ. P. 37(c). The Department appealed, and, finding little merit in the appeal, we affirm.

## I.

To give some context to the dispute on appeal, we deem it beneficial to briefly introduce some of the facts and issues presented in the lawsuit. The intersection at issue is located in rural Bingham County. It forms a T. On the night of the accident Forman was on the road that dead-ends at the intersection, forcing the driver to go left or right. Near that intersection, the road Forman was on widens a bit. The intersection was marked with a stop sign, but the road down which Forman was traveling was not marked with a stop-ahead sign. The stop sign is not directly perpendicular to the road because of the widening of Wicks Road as it intersects Highway 91. Rather, it is offset somewhat to the right and at a slight angle. The visibility of the stop sign was an issue at trial.

The guidelines for sign placement are established very generally by statute, and slightly less generally provided for in a document called the Manual on Uniform Traffic Control Devices (Manual). In 1994, the Department formally studied intersections in the area and concluded that a stop-ahead sign at this particular intersection was unnecessary. Schwan's theory was that due to the intersection's configuration, the stop sign was not readily visible. Thus, it alleged, the intersection warranted a stop-ahead sign, the agency was duty-bound to put one up, and the agency's failure to do so was a substantial factor in the Forman accident.

During trial, both parties introduced evidence about whether a stop-ahead sign should have been placed along the road prior to the intersection. Photographs of the road and intersection were introduced. One such photograph, taken after the accident, showed that a stop-ahead sign had been placed along the road. Admission of this evidence was stipulated to prior to trial, but the agency had previously objected to any introduction of this evidence. There was also testimony about whether the sign would have made any difference. The district judge allowed Forman to testify about what he would have done had he seen the stop-ahead sign. The judge also allowed Forman to testify about why he pleaded guilty to vehicular manslaughter. During the jury's deliberations, it (the jury) passed a note to the judge asking him about the relationship between the Man-

---

1. Wicks Road is also known as 200 East.

ual and the 1994 study. The judge told the jury to reread the instructions.

## II.

■ In the ensuing paragraphs, we discuss most of the Department's points of contention on appeal. Those we do not discuss were not presented to the district court in the context of the Department's motions for judgment notwithstanding the verdict or for new trial. In other words, while some of the errors asserted might have been independent grounds for appeal, Idaho R. Civ. P. 50(b), the Department only appealed the denial of the motions. Yet, some of the complaints about the orders denying the Department's motions were not presented within the context of the motions and the Department has not alleged those errors as independent grounds for reversal. Having failed to present these issues to the district court and, having failed to argue them independent of the motions, it should come as no surprise that we decline to address them. *See Garner v. Bartschi*, 139 Idaho 430, 436, 80 P.3d 1031, 1037 (2003).

### A.

Our discussion begins with the motion for judgment notwithstanding the verdict.

### 1.

■ When a trial judge receives such a motion, the judge begins the inquiry by asking him or herself whether there is substantial evidence in the record upon which the jury could properly find a verdict for the party against whom the judgment notwithstanding the verdict is sought. *See Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). The judge's task in answering this question is to review all the evidence and draw all the reasonable inferences therefrom in the light most favorable to the non-moving party. *Id.* at 764, 727 P.2d at 1192. (The party seeking a judgment notwithstanding the verdict admits the truth of all the other side's evidence and every legitimate inference that can be drawn from it. *Stephens v. Stearns*, 106 Idaho 249, 252–53, 678 P.2d 41, 44–45 (1984).) The judge is not an extra juror, though; there is no weighing of evidence or passing on the credibility of witnesses or making of independent findings on factual issues. *Gmeiner v. Yacte*, 100 Idaho 1, 4, 592 P.2d 57, 60 (1979). Instead, the judge must determine whether the evidence is substantial—that is, whether it is of sufficient quality and probative value that reasonable minds could arrive at the same conclusion as did the jury. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974).

■ Our task on appeal of an order denying a motion for judgment notwithstanding the verdict is the same as that of the trial judge is when he or she considers the motion. *Quick v. Crane, supra*, 111 Idaho at 764, 727 P.2d at 1192. Whether the trial court should have entered a judgment notwithstanding the verdict is purely a question of law. *Id.*

### 2.

■ The Department tells us the record does not contain substantial evidence upon which a reasonable jury could have concluded the lack of a stop-ahead sign was a substantial factor in the accident. Its main complaint is that all the evidence is speculative. A time-honored objection, speculation is generally understood to be "the art of theorizing about a matter as to which evidence is not sufficient for certain knowledge." *Karlson v. Harris*, 140 Idaho 561, 565, 97 P.3d 428, 432 (2004) (discussing speculation in the context of a challenge to expert testimony) (quoting BLACK'S LAW DICTIONARY 1255 (5th ed.1979)). Our rules of evidence, specifically Rules 602 and 701, generally do not permit speculative testimony.

Schwan's disagrees with the Department's characterization of the evidence. It points us to a number of facts adduced at trial that qualify as substantial evidence. To identify but a few: the stop sign was difficult to see due to the intersection's configuration, the sign was intermittently obstructed, and Forman testified that had he seen a stop-ahead sign he would have known an intersection was coming and slowed down to turn right. Additionally, photographs were admitted showing how perceptible (or imperceptible) the stop sign was both at night and during

daylight hours. Drawing all the inferences in Schwan's favor, we believe the jury could have concluded that the absence of a stop-ahead sign was a substantial factor in the accident.

■■■ The Department contends, however, that Forman's testimony about what he would have done had he seen a stop-ahead sign was not admissible. We don't agree. It's fair to say that most people who have obtained a driver's license know what a stop-ahead sign looks like, what it tells a driver, and what a driver is supposed to do when a driver sees such a sign. Given the common experience shared by drivers upon the public highways, the jury could have inferred that had Forman seen a stop-ahead sign he would have known a stop sign was *coming* and acted appropriately. The jury did not need Forman's testimony to demonstrate that, had he seen a stop-ahead sign, he would have known a stop sign was ahead. Forman was not hypothesizing about some far-fetched possibility grounded in neither established fact nor undisputable common experience. And besides, whether he *would* have stopped wasn't the issue—he was asked and simply affirmed that he knew what a stop-ahead sign looked like and what it meant.

### B.

We next consider the Department's motion for a new trial.

### 1.

■■■■■ Idaho R. Civ. P. 59(a) delineates several bases on which a party may seek a new trial. The Department contends that the district court should have granted it a new trial under Rule 59(a)(6) (insufficiency of the evidence to justify the verdict) and under Rule 59(a)(7) (legal errors committed at trial). We review orders denying motions for new trial for an abuse of discretion. *Pratton v. Gage,* 122 Idaho 848, 850, 840 P.2d 392, 394 (1992). Such a review entails this three-part inquiry: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the bound-

aries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

### 2.

■■■ The Department asserts that the district court erred in failing to instruct the jury as to the effect of Forman's guilty plea to the vehicular manslaughter charges. Although the Department did not submit a jury instruction in this regard, it did raise the matter during the conference on jury instructions. Counsel for the Department then indicated that he would want "something along the line: 'A conviction of a criminal charge which alleges facts that are at issue in a civil lawsuit is evidence of negligence.'" Apparently, it was the Department's position that the jury should be instructed that the guilty plea to the manslaughter charges was evidence of negligence. The district court declined the instruction on two grounds. First, the court indicated that this instruction should have been submitted along with the Department's other requested instructions. Second, the court indicated that the issue was covered by another instruction, stating that failure to stop at a stop sign constitutes negligence. The agency's purpose, to show that Forman acted negligently, was adequately covered by the instruction. It seems fairly obvious that the jury found Forman to be negligent and that the negligence was imputed to his employer, Schwan's. The district court did not err in failing to honor the tardy request.

### 3.

■■■ The Department next contends that the district court abused its discretion by allowing Forman to explain why he pleaded guilty to vehicular manslaughter. The agency asserts that Forman's guilty plea to vehicular manslaughter charges should collaterally estop his employer from raising any defenses, such as comparative negligence.[2] However, we find no error on this issue.

---

**2.** The Department did not raise the collateral estoppel argument to the district court in its

motion for judgment notwithstanding the verdict.

The jury was certainly aware of Forman's guilty plea to the vehicular manslaughter charges. The judgment of conviction and related documents were admitted into evidence. Forman testified that he entered a guilty plea to two counts of misdemeanor vehicular manslaughter. Schwan's counsel inquired as to why he had done so. The Department's counsel objected solely on grounds of relevance but the objection was overruled. Forman indicated that he did not want to put the families and himself through a long period of trial and that he was concerned about facing possible felony manslaughter charges. The Department first raised the claim that Forman's plea was conclusive against Schwan's in connection with its motion for new trial.

■ Generally speaking, the collateral estoppel inquiry involves answering five questions: (1) whether the party against whom the earlier decision is asserted had a full and fair opportunity to litigate that issue; (2) whether the issue decided in the prior action identical to the one presented in the subsequent action; (3) whether the issue was actually decided in the prior litigation; (4) whether there was a final judgment on the merits; and (5) whether the party against whom the plea is asserted was a party or in privity with a party to the prior case. *See Anderson v. City of Pocatello,* 112 Idaho 176, 183–84, 731 P.2d 171, 178–79 (1987).

According to the record, Schwan's was in no way connected to, and had no legally recognized interest in, the underlying criminal action. "Privity" is defined as the "connection or relationship between two parties, each having a legally recognized interest in the same subject matter." BLACK'S LAW DICTIONARY 1217 (7th ed.1999). It is generally accepted that whether privity exists is not simply a matter of relationship, as the Department contends but, rather, whether the party against whom the doctrine is asserted had its legal rights litigated in the prior action. *See Carrigg v. Cannon,* 347 S.C. 75, 552 S.E.2d 767, 770 (Ct.App.2001) (quoting

*Wade v. Berkeley County,* 330 S.C. 311, 498 S.E.2d 684, 687 (Ct.App.1998)). Indeed, due process concerns would plague a holding that barred a party from asserting its rights when it did not have an opportunity to be heard. *See Safeco Ins. Co. of America v. Yon,* 118 Idaho 367, 371, 796 P.2d 1040, 1044 (Ct.App. 1990); *Carrigg,* 552 S.E.2d at 770.

In the manslaughter prosecution, it was Forman's liberty that was at issue and the decisions in the case were up to him— Schwan's was not a party, there is no evidence it participated in the criminal case, and it had no right to present any evidence. As Forman's employer, Schwan's was without question responsible for the civil negligence of its employee and a jury instruction so said. But Schwan's did not plead guilty. It did not commit a criminal act. So, since it had no opportunity or reason to participate in the criminal case, it was not in privity with Forman and cannot be bound by his conviction.

## 4.

■ The Department also contends that the district court erred when it admitted evidence that a stop-ahead sign had been placed along the road sometime after the accident in question. Schwan's counters that the Department waived any objection to the asserted error and, at any rate, Idaho R. Evid. 407 does not apply because the Department was not the actor placing the sign, which it must have been under *Pau v. Yosemite Park & Curry Co.,* 928 F.2d 880 (9th Cir.1991) (Fed.R.Evid. 407 applies only to subsequent remedial measures by defendant). Schwan's also asserts that it did not argue that the sign was proof that it should have been there in the first place and, ergo, was not offered to prove culpable conduct.

Prior to trial the Department submitted an exhibit list. One exhibit on this list was a series of photographs, one of which showed a stop-ahead sign along the road in question.[3] This sign had been placed there by the County after the accident. Then, shortly before trial the Department moved in limine to ex-

It was raised in the context of the motion for new trial and that is why we address it here.

3. It was not made clear to us exactly why the Department would want to include in its proposed exhibits photographs it eventually moved to exclude.

clude all evidence of the stop-ahead sign. At a hearing on the motion, the district court deemed the evidence admissible under *Pau.* On the eve of trial, the parties stipulated to admit several pieces of evidence, including photographs showing the stop-ahead sign. The Department then renewed its motion in limine but this time the judge reserved ruling on the issue. The judge explained that in initially denying the motion, he had inadequate information to determine the admissibility of the stop-ahead sign. Specifically, the judge explained that he did not know the foundation for the evidence and decided to reserve ruling on the issue until he heard the evidence. The Department did not object when this evidence was introduced at trial.

Issues abound in this set of facts, but we will dispose of the Department's contention here by holding that the Department waived its objection when, after the judge issued his second, wait-and-see ruling on the evidence, the agency failed to continue to object when the evidence was offered. We have said before that when a trial judge elects to hear the foundation for the evidence instead of ruling definitively on a motion in limine, counsel opposing the evidence must continue to object as the evidence is presented. *Kirk v. Ford Motor Co.*, 141 Idaho 697, 701, 116 P.3d 27, 31 (2005); *Gunter v. Murphy's Lounge, LLC,* 141 Idaho 16, 25, 105 P.3d 676, 685 (2005); *State v. Hester,* 114 Idaho 688, 699, 760 P.2d 27, 38 (1988).

Here, the judge initially issued a definitive ruling denying the motion in limine. At this point counsel needed not object further. *See State v. Hester,* 114 Idaho at 700, 760 P.2d at 39 (citing *Davidson v. Beco Corp.,* 112 Idaho 560, 733 P.2d 781 (Ct.App.1986) *rev'd and aff'd Davidson v. Beco Corp.,* 114 Idaho 107, 753 P.2d 1253 (1987)). Yet, counsel elected to renew the Department's motion, and this time the judge deferred ruling on the issue until the evidence and foundation were better developed. In this case, the renewed motion triggered an obligation on the part of the Department's counsel to follow the rule in *State v. Hester* (counsel obviously did not

have the benefit of *Gunter* or *Kirk* in 2004) and object when the evidence was offered.[4] The Department contends that there is no support for a conclusion that its requirement to object was somehow reinstated by the second ruling. But when counsel renewed a motion it had no obligation to renew, it made a tactical choice and, since the judge clearly indicated he previously had insufficient information on which to base his previous ruling, there was no reason to suspect the previous denial remained effective. Thus the effect of counsel's choice was essentially to vacate the previous ruling, and the obligation to object started anew.

### 5.

▬▬▬ Here we discuss why the judge did not err in denying the Department's motion for new trial under Idaho R. Civ. P. 59(a)(6). Different than the judge's task in reviewing a motion for judgment notwithstanding the verdict, a motion for new trial calls the trial judge to weigh the evidence and determine (1) whether the verdict is against his or her view of the clear weight of the evidence; and (2) whether a new trial would produce a different result. *Juarez v. Aardema,* 128 Idaho 687, 695, 918 P.2d 271, 279 (1996); *Heitz v. Carroll,* 117 Idaho 373, 378, 788 P.2d 188, 193 (1990); *Quick v. Crane,* 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986). On appellate review, we must necessarily *review* the evidence; such review does not, however, rise to a *weighing* of it. *Dinneen v. Finch,* 100 Idaho 620, 626, 603 P.2d 575, 581 (1979). Our focus, then, is on the process, not the result, of the district court's decision. *Quick v. Crane, supra,* 111 Idaho at 772, 727 P.2d at 1200.

The Department lodges two complaints about the Rule 59(a)(6) order. It first argues the jury verdict was against the clear weight of the evidence and a new trial would produce a different result, and it then claims the court misapplied the standard of review. The Department supports its position with three points: (1) Forman testified that he knew that the intersection and stop sign

---

4. We have not been told that the basis for the second motion was different from the basis of the first motion. Nor does it appear that the scope of the deferred ruling differed from the scope of the denial.

were there on the night in question; (2) the Department's witnesses testified that the stop sign was clearly visible; and (3) Schwan's witnesses were less credible to the point of being unpersuasive because they did not view the scene at the same time of night or did not view it personally. To buttress its argument, the Department offers us two cases involving vehicle accidents in which the reviewing court reversed orders denying motions for new trial: *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.*, 112 Idaho 722, 735 P.2d 1033 (1987) and *Lehmkuhl v. Bolland*, 114 Idaho 503, 757 P.2d 1222 (Ct.App. 1988). Both of these cases involved facts so different from this case that they are not useful in reviewing the district court's order in this case. In *Garrett Freightlines*, we noted that the driver *"traveled through over a mile and a half of warning signs and then drove directly into a line of six stopped vehicles without appreciably slowing down or swerving to avoid the collision."* 112 Idaho at 729, 735 P.2d at 1040 (emphasis added). But here, of course, there was no warning sign. *Lehmkuhl* is so dissimilar it needs no explanation by us.

Applying the above-articulated standard of review to the facts of this case results in a conclusion that the district court did not abuse its discretion. Prong one of the *Sun Valley* test is met—the district court clearly perceived the issue before it as one of discretion. As noted above, prong two—whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it—requires us to determine whether the district court independently weighed the evidence and determined whether, in its view, the verdict went against the clear weight of the evidence. *See Sheridan v. Jambura, supra* n. 1, 135 Idaho at 789–90, 25 P.3d at 102–03.

This prong, too, is met, although it is closer than it should be. The district court understood its role in ruling on a Rule 59(a)(6) motion, noting in its memorandum decision that it must weigh all the evidence and determine whether the decision is supported by the evidence. And, while it is not explicitly clear, the court's decision at least

implicitly concludes that it weighed the evidence and was unable to find that the verdict went against the clear weight of the evidence. The district court wrote that the verdict was supported by the evidence and explained its rationale.

The Department makes a fairly good point—we can see how it might appear from the judge's explanation that the judge deferred to the jury's findings instead of conducting his own review and drawing his own conclusion. The judge noted that the weight of the testimony of the prosecutor who prosecuted Forman's criminal case (which indicated that the sign was very clearly visible) was for the jury to decide. The judge also wrote that the jury was to determine what weight to give evidence of Forman's guilty plea, his testimony about his familiarity with the road, and whether his employer had coerced his testimony. Although the better practice might be for the trial judge to specifically express his or her view of the particularly probative evidence and then conclude one way or the other, one can infer from the district court's explanation in this case that it was simply expressing its view that there was evidence to support the jury's verdict. The third prong—that the court reached its decision by an exercise of reason—is also satisfied. So, we are convinced that the judge did not misapply the standard of review and that he properly weighed the evidence and concluded that the verdict was not against the clear weight of the evidence.

### C.

■■■■ The last issue we must decide in this appeal is whether the district court erred when it awarded Schwan's attorney fees under Idaho R. Civ. P. 37(c). That rule provides:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was *other good reason for the failure to admit.*

A trial court's decision to award fees under this section is discretionary and is accordingly reviewed under the abuse-of-discretion standard. *Bailey v. Sanford,* 139 Idaho 744, 753, 86 P.3d 458, 467 (2004).

Of import to our analysis here, Schwan's requested that the agency admit that it had a duty to erect and maintain traffic-control devices at the intersection in question, that the signage at that intersection had been altered after the accident, and that the settlement between Schwan's and the decedents' representatives was reasonable. The agency denied all these requests and cited a lack of knowledge as its basis. In its memorandum awarding fees under Rule 37(c), the district court noted that at trial, an agency witness admitted the agency had a duty to maintain traffic-control signs at the intersection and that the agency offered no evidence the signage had not changed after the accident. Further, the district court wrote, the agency did not offer any proof challenging the reasonableness of the settlement.

On appeal, the Department takes issue with the reasons the district court cited for awarding fees. It does not, however, raise any other legal basis that would preclude fees in this case, nor does it challenge the amount awarded. Based on the challenge before us, we do not believe the district court abused its discretion in awarding fees for the reasons stated. Idaho R. Civ. P. 36(a) provides that a party may not give lack of knowledge as a reason for failure to admit or deny unless the party states that it has made reasonably inquiry and has been unable to obtain sufficient information to admit or deny. Idaho R. Civ. P. 37(a) requires a party to qualify a response to a request for admission or deny only a part of the matter requested. The Department argues that it would not be appropriate to admit a duty that it shared with the County. However, under Rule 37(a), the agency could have qualified its response. The Department also argues that since the court ruled evidence of the stop-ahead sign was inadmissible, it cannot be penalized in the form of Rule 37(c) fees for not admitting the matter. But that does not excuse the Department from claiming it had "insufficient information" to admit or deny the request, without showing that it had made reasonable inquiry. It should be noted that the stop-ahead sign was erected in August of 2001, the denial based on lack of sufficient information was made on January 31, 2003, and the initial ruling on the motion in limine regarding the sign was not made until June 30, 2004. Finally, the agency argues that it was not privy to the settlement agreement and thus could not admit or deny its reasonableness, but the agency has not shown us that it conducted a reasonable inquiry.

## III.

The district court's orders denying the Department's motions for new trial and for judgment notwithstanding the verdict are affirmed. So, too, is the court's order awarding Schwan's attorney fees under Idaho R. Civ. P. 37(c). Schwan's seeks attorney fees on appeal under I.C. § 12–121, contending the appeal is frivolous. We are not left with the abiding belief that the appeal is frivolous. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Schwan's request for fees is denied, but the company is awarded costs on appeal.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and BURDICK concur.