# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43124

STATE OF IDAHO, )
)
    Plaintiff-Respondent, )
)
v. )
)
CHARLES ANTHONY CAPONE, )
)
    Defendant-Appellant. )

Boise, September 2017 Term

Filed: September 6, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. Hon. Carl B. Kerrick, District Judge.

The judgment and the order of the district court are affirmed.

Silvey Law Office, Ltd., Boise, for appellant.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

## ON THE BRIEFS

HORTON, Justice.

This is an appeal from felony convictions for first degree murder, failure to notify coroner or law enforcement of death, and conspiracy to commit failure to notify coroner or law enforcement of death. The charges were brought against Charles Capone following the disappearance of Rachael Anderson in April of 2010. Capone was convicted of all charges following a sixteen-day jury trial. In this appeal, Capone challenges the sufficiency of the evidence to support his conviction and asserts that the district court erred in the admission of certain evidence and by denying his motion for new trial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Capone and Anderson were married in September of 2009. The two separated that December and Anderson filed for divorce. Anderson began receiving harassing phone calls following the separation and her car was vandalized multiple times. At the time, Capone owned Palouse Multiple Services, a repair shop in Moscow, Idaho. Capone repaired Anderson's car

1

after it was vandalized. Capone was working on Anderson's car on Friday, April 16, 2010. At the time, Anderson was driving a white Yukon that belonged to a friend of Capone.

Anderson drove the Yukon to Capone's shop to pick up her car. Anderson became upset when she learned her car was not ready. Anderson went to run some errands while Capone continued to work on the car. Anderson bought some beer with Capone's debit card and then, according to Capone, ran off with a man named Vince. No one saw or heard from Anderson after her visit with Capone. Anderson was reported missing after she failed to show up for work the following Monday.

On April 20, 2010, Capone was interviewed by the police. During this interview, Capone admitted that he had made the harassing phone calls to Anderson's phone. The following day, the Anderson family's search for her led to their discovery of the Yukon in Lewiston. Anderson's purse was inside the vehicle.

On May 6, 2010, Capone was arrested for a federal firearm violation unrelated to Anderson's disappearance. While incarcerated on this charge, Capone made several incriminating statements to cellmates Brent Glass and Joshua Voss about his role in Anderson's disappearance.

After an investigation that lasted for three years, on May 1, 2013, Capone and David Stone were charged with first degree murder and related crimes in connection with Anderson's disappearance. Following a preliminary hearing where both Capone and Stone were bound over on all charges, Stone entered into a plea agreement with the State in which he agreed to testify against Capone in exchange for dismissal of the murder charge against him.

Before trial, the State filed a motion in limine regarding several evidentiary issues. The State sought to prevent Capone from introducing evidence of prior felony convictions to impeach the testimony of Glass and Voss. Pursuant to Idaho Rule of Evidence 404(b), the State also gave notice of its intent to use evidence of a past strangulation attempt and federal firearm crimes by Capone. After hearing argument, the district court ruled that Glass and Voss's prior felony convictions for burglary were not relevant to their credibility and reserved its ruling on the admissibility of the 404(b) evidence until trial.

At trial, the State relied heavily on Stone's testimony. Stone testified that he was at Capone's shop on April 16, 2010. Capone went outside to talk with Anderson. Stone heard a noise and went outside to find Capone strangling Anderson. Anderson was still moving and

Stone asked Capone what he was doing. Capone instructed Stone to get a tarp. Stone went inside and searched for a tarp. When he came back out, Anderson was dead. Stone testified that he and Capone wrapped Anderson's body in the tarp and a chain and drove to Lewiston, where they threw her body into the river from a bridge.

The jury found Capone guilty of all charges. Following the verdict, Capone learned of a statement Stone made to Tyler Byers while the two were cellmates in July of 2013. Stone told Byers that they would not find Anderson's body in the river because she was not in the river. Capone filed a motion for a new trial based on this newly discovered information. After hearing the motion, the district court found that the new evidence did not merit a new trial as it was merely impeachment evidence and likely would not produce an acquittal. Capone timely appealed his conviction and the denial of his motion for a new trial.

## II. STANDARD OF REVIEW

"This Court exercises free review over whether a jury was given proper instructions." *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). "Generally Idaho's appellate courts will not consider error not preserved for appeal through an objection at trial." *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010).

> [W]hen an error has not been properly preserved for appeal through objection at trial, the appellate court's authority to remedy that error is strictly circumscribed to cases where the error results in the defendant being deprived of his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal.

*Id.* (citation omitted).

"Whether evidence is relevant is an issue of law, which we review *de novo*." *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014). "The denial of a motion for a new trial is reviewed for an abuse of discretion." *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008).

## III. ANALYSIS

Capone advances several arguments on appeal. Capone first argues that there was insufficient evidence to corroborate Stone's accomplice testimony as required by Idaho Code section 19-2117. Next, Capone argues that the failure to instruct the jury regarding the corroboration requirement constitutes fundamental error. Capone next asserts that the district court erred by admitting 404(b) evidence of Capone's prior convictions and an alleged physical altercation between Capone and Anderson. Capone also argues that the district court erred when

it found Glass and Voss's felony burglary convictions were not relevant to their credibility. Even if the individual errors are determined to be harmless, Capone contends that the doctrine of cumulative error requires reversal. Finally, Capone contends that the district court erred when it denied his motion for a new trial. These arguments will be addressed in turn.

**A. There was sufficient evidence to corroborate Stone's testimony.**

Capone argues that Stone was an accomplice to the crimes of murder and failure to notify coroner or law enforcement of death and thus, Idaho law requires that his testimony be corroborated. The State concedes that Stone was an accomplice to the crime of failure to notify coroner or law enforcement of death and conspiracy to commit that crime, but contends that Stone was not an accomplice to the murder. We will first consider whether Stone was an accomplice to murder, then consider whether there was sufficient corroborating evidence for the crimes where Stone was an accomplice.

**1. Stone was not an accomplice to the murder.**

Capone argues that Stone was an accomplice to the murder because while Anderson was still alive Capone instructed him to go and get a tarp and Stone followed that command. The State argues that Stone was merely a bystander and did not take any action that would make him an accomplice to murder. The State is correct.

Idaho Code section 19-2117 states in pertinent part, "[a] conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense . . . . " I.C. § 19-2117. Accomplice is defined by Idaho Criminal Jury Instruction 313 as:

> a person who intends to promote or assist in the commission of a crime and who either directly commits the acts constituting the crime or who, before or during its commission, aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit the crime. Mere presence at, acquiescence in, or silent consent to, the planning or commission of a crime is not [in the absence of a duty to act] sufficient to make one an accomplice.

"Where the evidence raises a genuine issue as to whether a witness is an accomplice, the district court must submit the issue to the jury for resolution and instruct the jury accordingly." *Matthews v. State*, 136 Idaho 46, 50, 28 P.3d 387, 391 (Ct. App. 2001); ICJI 313. "However, if it is clear from the evidence that a witness is an accomplice of the defendant, the trial court should decide that the witness is an accomplice as a matter of law and instruct the jury accordingly." *Id.*

4

"Mere presence at the place of a crime or acquiescence in its commission, without participation, does not constitute a crime." *State v. Scroggins*, 110 Idaho 380, 386, 716 P.2d 1152, 1158 (1985). "Some aiding, abetting or actual encouragement on the part of the person charged is essential to make that person an accomplice." *Id.* "To be an aider and abettor one must share the criminal intent of the principal; there must be a community of purpose in the unlawful undertaking." *Id.*

Here, Stone testified that he was in Capone's shop when he heard a noise outside. Stone walked out of the shop and witnessed Capone strangling Anderson. Stone asked Capone what he was doing at which point Capone told him to get a tarp. When Stone left, Anderson was still moving and when he came back she was no longer moving. There is nothing in the record that suggests that Stone did anything to aid, abet, or encourage Capone to commit murder. Because Stone was not an accomplice to the murder, Stone's testimony concerning the murder was not required to be corroborated.

**2. There was sufficient evidence presented at trial to corroborate Stone's testimony for failure to notify coroner or law enforcement of death and conspiracy to commit failure to notify coroner or law enforcement of death.**

Capone next argues that there was not sufficient corroborating evidence of Stone's testimony to support his convictions for failure to notify coroner or law enforcement of death and conspiracy to commit failure to notify coroner or law enforcement of death. In support of this argument, Capone points to evidence in the record which appears to contradict Stone's testimony.

As previously noted, Idaho Code section 19-2117 requires accomplice testimony to be corroborated. "The corroborating evidence offered need only connect the defendant with the crime." *State v. Aragon*, 107 Idaho 358, 364, 690 P.2d 293, 299 (1984). "While the corroborating evidence must be independent of the accomplice's testimony . . . it need not be sufficient in and of itself to convict the defendant." *Id.* "Corroborating testimony may be slight and need only go to one material fact." *Id.* "[C]orroboration may be entirely circumstantial." *State v. Swenor*, 96 Idaho 327, 329, 528 P.2d 671, 673 (1974). "Corroboration may be furnished by a defendant's own words or conduct." *Id.*

Stone was an accomplice to the crimes of failure to notify coroner or law enforcement of death and conspiracy to commit that crime. Stone testified that after Capone killed Anderson, he assisted in rolling Anderson in a tarp, wrapping that tarp with a chain, and then throwing

5

Anderson's body from a bridge. A shop owner in Moscow testified that Capone purchased a new tarp the following day. Evidence was admitted that Capone told Voss that Anderson had gone away before and always came back, but this time she was not coming back. Capone also told Glass that Anderson was not doing anything "but pushing up daisies," and that he buried her so deep, "they'll never find her." We hold that this was sufficient evidence to corroborate Stone's testimony regarding the crimes of failure to notify coroner or law enforcement of death and conspiracy to commit that crime.

## B. Because there was sufficient evidence to corroborate Stone's testimony for crimes in which he was an accomplice, we do not consider whether the district court erred in failing to give a corroboration instruction.

Capone next argues that the district court erred when it failed to give a jury instruction regarding corroboration. Capone did not object to the failure to give a corroboration instruction at trial. The State argues that even if the district court erred in failing to give a corroboration instruction that such an error does not rise to the level of fundamental error.

As discussed above, there was sufficient evidence presented at trial to corroborate Stone's testimony. Because there is sufficient evidence to corroborate Stone's testimony, any error that may have occurred by failing to give a corroboration instruction is harmless. In *State v. Scroggins*, 110 Idaho 380, 386, 716 P.2d 1152, 1158 (1985), the defendant was convicted based largely on testimony from an accomplice. *Id.* Affirming the defendant's conviction, we noted that the accomplice's testimony was corroborated. *Id.* "Therefore, the district court's failure to give the accomplice instruction, even if it were erroneous, was harmless and hence does not give cause for reversal." *Id.* Because there was sufficient evidence to corroborate Stone's testimony, the failure to give the accomplice instruction was harmless error.

## C. Evidence of the attempted strangulation should not have been admitted.

Capone next argues that the district court erred when it admitted evidence of his past crimes or wrongs. Capone argues that evidence of a past strangulation attempt and that he was not allowed to have firearms due to past felony convictions was improperly admitted. The State responds that although these issues were addressed during a motion in limine, the district court reserved its final ruling for trial and because Capone did not object to the admission of this evidence at trial he did not properly preserve the issues for appeal. Alternatively, the State argues that this evidence was admissible under Idaho Rule of Evidence 404(b) to show motive.

Idaho Rule of Evidence 404(b)[1] provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…."

"The admissibility of evidence offered pursuant to Rule 404(b) requires a two-step analysis." *Russo*, 157 Idaho at 308, 336 P.3d at 241. "First, the evidence 'must be sufficiently established as fact and relevant as a matter of law to a material and disputed issue other than the character or criminal propensity of the defendant' " *Id.* (quoting *State v. Pepcorn*, 152 Idaho 678, 688, 273 P.3d 1271, 1281 (2012)). "Second, the court must determine pursuant to Rule 403 that 'the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.' " *Id.* (quoting *Pepcorn*, 152 Idaho at 689, 273 P.3d at 1282).

Capone alleges that evidence of an attempted strangulation in December 2009, as well as evidence of his inability to possess firearms due to past felony convictions was used as inadmissible propensity evidence and did not fit within any of the exceptions listed in Idaho Rule of Evidence 404(b). These two categories of evidence will be considered separately below.

### 1. Admission of the prior attempted strangulation was harmless error.

Capone argues that the district court erred when it allowed Jennifer Norberg to testify regarding his earlier attempted strangulation of Anderson. The State argues that the evidence was relevant to his motive to kill Anderson. Capone is correct that the district court erred when it admitted this evidence, however this error was harmless.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." I.R.E. 404(b). However, the evidence may be admitted if it is relevant to motive. I.R.E. 404(b). "Whether evidence is relevant is an issue we review *de novo*." *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014). "Motive is a well-accepted method of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character." *Id.* (quoting Am. Jur. 2d *Evidence* § 439 (2008)). "Evidence of motive is relevant 'when the existence of a motive is a circumstance tending to make it more probable that the person in question did the act' " *Id.* (quoting Am. Jur. 2d *Evidence* § 439 (2008)).

---

[1] We note that the rule was amended, effective July 1, 2018. We will refer to the version in effect at the time of Capone's trial.

Here, the State asserts that the evidence of the attempted strangulation was relevant to show the reason for the pending divorce. While the divorce may be relevant to Capone's motive to kill Anderson, the underlying cause of that divorce is not relevant. The district court erred when it found that Norberg's testimony was relevant to Capone's motive.

The State argues that even if the district court erred, the error was harmless because testimony of strangulation was admitted without objection through other witnesses. The State is correct.

"In harmless error review the burden of persuasion is on the State to demonstrate that the constitutional violation did not affect the outcome of the case." *Perry*, 150 Idaho at 225, 245 P.3d at 977. In this case, Capone made a number of statements to Glass and Voss about Anderson not coming back and how she was pushing up daisies. Specifically Capone told Glass that the pending strangulation charge was no big deal and that he barely choked her. This statement combined with the other evidence presented at trial would have led to Capone's conviction without Norberg's testimony regarding the earlier attempted strangulation. As such, we are convinced beyond a reasonable doubt that any error committed by the district court in admitting this evidence did not contribute to the verdicts. *Id*. at 227, 245 P.3d at 979.

## 2. Capone failed to preserve his objection to evidence of the federal firearms charge for appeal.

Capone contends that the district court erred when it allowed testimony during trial relating to his charge for possessing a firearm as a convicted felon. Capone argues that the district court made a conclusive ruling in response to the motion in limine that this evidence was not admissible and then erred when it allowed this evidence later. The State asserts that the ruling in the motion in limine was specifically limited to events around the May 6, 2010, arrest and that Capone failed to preserve this issue by not objecting to the admittance of this evidence during trial.

"Where no advance ruling has been obtained, counsel must continue to object as the evidence is presented." *State v. Hester*, 114 Idaho 688, 700, 760 P.2d 27, 39 (1988). "We have said before that when a trial judge elects to hear the foundation for the evidence instead of ruling definitively on a motion in limine, counsel opposing the evidence must continue to object as the evidence is presented." *Schwan's Sales Enterprises, Inc. v. Idaho Transp. Dept.*, 142 Idaho 826, 833, 136 P.3d 297, 304 (2006).

8

Here, the district court did not rule on the admissibility of evidence relating to Capone's federal firearms charge. Capone asserts that the ruling regarding his May 6, 2010, arrest covers all evidence related to his federal firearms charge. The district court ruled, "[t]he defense motion to exclude statements made to the police on May 6, 2010 in their case in chief is granted." We are unable to conclude that this holding barred the State from presenting evidence of the federal firearms charge. Although Capone objected to some testimony regarding the firearms charge, he did not object when Glass testified about Capone's inability to possess firearms. He therefore failed to preserve this issue for appeal.

**D. Glass and Voss's burglary convictions were relevant to their credibility.**

The State's motion in limine seeking to prevent Capone from using Glass and Voss's former burglary convictions to impeach their credibility contended that such convictions were not relevant to their credibility. After hearing the motion, the district court agreed. Capone argues that the district court erred when it held that the convictions were not relevant. Capone is correct that the district court erred, however, we hold that the error was harmless.

Idaho Rule of Evidence 609 allows prior felony convictions to be used to impeach a witness's credibility when the conviction is relevant to credibility and the probative value of the evidence does not outweigh the prejudicial effect. I.R.E. 609. "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date…" unless the court determines that the probative value substantially outweighs the prejudicial effect. I.R.E. 609(b).[2] In order to determine if evidence of a prior conviction should be admitted under Idaho Rule of Evidence 609, courts apply a two-step approach: "(1) whether the evidence is relevant to the credibility of the witness; and (2) whether the probative value of the evidence outweighs the unfair prejudicial effect to the party offering the witness." *State v. Bush*, 131 Idaho 22, 30, 951 P.2d 1249, 1257 (1997). Here, the district court found that the burglary convictions were not relevant to the credibility of the witnesses and did not reach the question of prejudice.

"Whether evidence is relevant is an issue of law, which we review *de novo*." *Russo*, 157 Idaho at 308, 336 P.3d at 241. "The determination whether evidence of a particular felony

---

[2] As with Rule 404(b), this rule was amended effective July 1, 2018. We will refer to the version in effect at the time of Capone's trial.

conviction is relevant to credibility depends on the particular facts and circumstances of each case and must therefore be decided on a case-by-case basis." *Bush*, 131 Idaho at 31, 951 P.2d at 1258. In *State v. Ybarra*, 102 Idaho 573, 634 P.2d 435 (1981), this Court identified three categories of felonies and discussed the relevancy of each category to credibility. The first category contains crimes "such as perjury, [that] are intimately connected with" credibility. *Ybarra*, 102 Idaho at 580, 634 P.2d at 442. Burglary fits into the second category with crimes such as robbery. *Id.* Crimes in this second category are, "somewhat less relevant" to credibility. *Id.* The third category contains, "[a]cts of violence" and these crimes "generally have little or no direct bearing on honesty and veracity." *Id.* at 581, 634 P.2d at 443.

In *Ybarra*, the district court ruled that the State could use a prior felony conviction for burglary to impeach the defendant should he choose to testify. *Id.* at 580, 634 P.2d at 442. Ybarra appealed, arguing that burglary was not relevant to credibility. *Id.* This Court stated, "[a]s to Ybarra's argument that burglary is not relevant to credibility, the law is generally against him." *Id.* Affirming the district court's decision, this Court stated:

> On the other hand robbery, larceny, and burglary, while not showing a propensity to falsify, do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness. If the witness had no compunction against stealing another's property or taking it away from him by physical threat or force, it is hard to see why he would hesitate to obtain an advantage for himself or friend in a trial by giving false testimony. Furthermore, such criminal acts, although evidenced by a single conviction, may represent such a marked break from sanctioned conduct that it affords a reasonable basis of future prediction upon credibility…

*Id.* at 581, 634 P.2d at 443(quoting Ladd, Credibility Test Current Trends, 89 Univ. Pa. L. Rev. 166 (1940)).

Here, the district court did not explain why the burglary convictions were not relevant to credibility. We hold that the district court erred when it determined that Glass and Voss's prior felony convictions were not relevant to credibility. Although the district court erred, such error was harmless. Both Glass and Voss testified that they were incarcerated at the time Capone made incriminating statements to them. In light of the jury's awareness of their incarceration and Stone's testimony that he saw Capone commit the murder, we are convinced beyond a reasonable doubt that the error did not contribute to the verdicts.

**E.  The doctrine of cumulative error does not require reversal.**

10

Capone asserts that even if there is not any one error that requires reversal, the combination of errors during trial deprived him of his right to due process and require reversal under the doctrine of cumulative error.

"The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's constitutional right to due process." *Dunlap v. State*, 141 Idaho 50, 65–66, 106 P.3d 376, 391–92 (2004) (quoting *State v. Sheahan*, 139 Idaho 267, 286, 77 P.3d 956, 975 (2003). "In order to find cumulative error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors when aggregated, denied the defendant a fair trial." *Id.* "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Parker*, 157 Idaho 132, 149, 334 P.3d 806, 823 (2014).

The State presented powerful evidence of Capone's guilt. Stone testified as to witnessing the murder, and Glass and Voss testified as to statements that Capone made suggesting his involvement in Anderson's murder. The jury heard extensive evidence regarding the deterioration of Anderson and Capone's relationship. We are convinced beyond a reasonable doubt that the two errors that we have determined the trial court committed did not contribute to the verdicts. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010)

## F. The district court did not abuse its discretion when it denied Capone's motion for new trial based on newly discovered evidence.

Following Capone's conviction, new evidence was discovered regarding a statement Stone made prior to trial. In March 2015, Tyler Byer was arrested for DUI. While in jail, Byer told police about a statement Stone had made while Stone and Byer were housed in the same jail cell in July of 2013. Stone told Byer that they would never find Anderson's body in the river because her body was not in the river. After Capone learned of this new evidence, he moved for a new trial. The district court denied the motion finding that the newly discovered evidence was not material and could have been used only for impeachment purposes. The district court reasoned that, because the new evidence was hearsay, it could only have been used to impeach Stone's testimony. Capone argues that Byer's testimony could have been introduced as substantive evidence under the party-opponent exception to the hearsay rule.

"Newly discovered evidence warrants a new trial only if the defendant demonstrates: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) it will probably produce an acquittal; and (4) failure to learn of the evidence was not due to a lack of diligence on the part of the defendant." *State v. Ellington*, 151 Idaho 53, 72, 253 P.3d 727, 746 (2011) (quoting *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008)). "Motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution, reflecting the importance accorded to considerations of repose, regularity of decision making, and conservation of scarce judicial resources." *Stevens*, 146 Idaho at 144, 191 P.3d at 222. "This Court reviews a denial of a motion for new trial for an abuse of discretion." *Ellington*, 151 Idaho at 72, 253 P.3d at 746.

In this case, the district court found that the first and the fourth prongs of the test were met by the defendant. However, the district court found that the evidence could be used for impeachment only, and that the new evidence likely would not produce an acquittal.

Capone argues that Stone's testimony was admissible under the party-opponent exception to the hearsay rule found in Idaho Rule of Evidence 801(d)(2). Capone is mistaken. Stone was not a party to the case; he was merely a witness. Because Stone was not a party to the action which pitted the State against Capone, his statement to Byer was not admissible as an admission of a party-opponent. Because Stone's prior statement could not be brought in as substantive evidence, the district court did not abuse its discretion when it held that Capone failed to demonstrate that the new evidence was material and not merely cumulative or impeaching.

We can find no error in the district court's determination that Capone also failed to demonstrate that the new evidence would probably have produced an acquittal. Capone spent a full day impeaching Stone with inconsistent statements he had made to police before November of 2013. At trial, Stone repeatedly stated that he had been living a lie and consistently lied to others about Anderson's disappearance before November 2013 when he decided to tell the police the truth. Stone's statement to Byer was made during the time in which Stone admitted to having lied about what happened to Anderson. For these reasons, we hold that the district court did not abuse its discretion when it denied Capone's motion for a new trial.

### IV. CONCLUSION

We affirm the judgment of the district court and its order denying Capone's motion for new trial.

Chief Justice BURDICK, Justice BRODY and Justice Pro Tem RYAN **CONCUR.**
JONES, J. sat, but did not participate due to his untimely death.