# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49437

| | |
|---|---|
| CHARLES ANTHONY CAPONE,<br><br>      Petitioner-Appellant,<br><br>v.<br><br>STATE OF IDAHO,<br><br>      Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed: April 21, 2023**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. Carl B. Kerrick, District Judge.

Judgment summarily dismissing third amended petition for post-conviction relief, <u>affirmed</u>.

Silvey Law Office Ltd; Greg S. Silvey, Boise, for appellant. Greg S. Silvey argued.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent. Kale D. Gans argued.

---

HUSKEY, Judge

Charles Anthony Capone alleges the district court erred by summarily dismissing his third amended petition for post-conviction relief. Capone's third amended petition raised various constitutional challenges to his criminal conviction, including prosecutorial misconduct and ineffective assistance of counsel claims. Capone argues all his claims were properly brought in his post-conviction case and alleged a genuine issue of material fact such that they should not have been summarily dismissed. All of Capone's prosecutorial misconduct claims are forfeited pursuant to Idaho Code § 19-4901(b) because they could have been raised on direct appeal and they do not fall within the exception to this general rule provided by the statute. Alternatively, none of the prosecutorial misconduct claims allege a genuine issue of material fact. Capone's claim of ineffective assistance of trial counsel is disproved by the record and, therefore, fails to

1

allege a genuine issue of material fact. The district court did not err, and the judgment summarily dismissing Capone's third amended petition for post-conviction relief is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Idaho Supreme Court's opinion for Capone's appeal in his underlying criminal case:

Capone and Anderson were married in September of 2009. The two separated that December and Anderson filed for divorce. Anderson began receiving harassing phone calls following the separation and her car was vandalized multiple times. At the time, Capone owned Palouse Multiple Services, a repair shop in Moscow, Idaho. Capone repaired Anderson's car after it was vandalized. Capone was working on Anderson's car on Friday, April 16, 2010. At the time, Anderson was driving a white Yukon that belonged to a friend of Capone.

Anderson drove the Yukon to Capone's shop to pick up her car. Anderson became upset when she learned her car was not ready. Anderson went to run some errands while Capone continued to work on the car.

Anderson bought some beer with Capone's debit card and then, according to Capone, ran off with a man named Vince. No one saw or heard from Anderson after her visit with Capone. Anderson was reported missing after she failed to show up for work the following Monday.

On April 20, 2010, Capone was interviewed by the police. During this interview, Capone admitted that he had made the harassing phone calls to Anderson's phone. The following day, the Anderson family's search for her led to their discovery of the Yukon in Lewiston. Anderson's purse was inside the vehicle.

On May 6, 2010, Capone was arrested for a federal firearm violation unrelated to Anderson's disappearance. While incarcerated on this charge, Capone made several incriminating statements to cellmates Brent Glass and Joshua Voss about his role in Anderson's disappearance.

After an investigation that lasted for three years, on May 1, 2013, Capone and David Stone were charged with first degree murder and related crimes in connection with Anderson's disappearance. Following a preliminary hearing where both Capone and Stone were bound over on all charges, Stone entered into a plea agreement with the State in which he agreed to testify against Capone in exchange for dismissal of the murder charge against him.

Before trial, the State filed a motion in limine regarding several evidentiary issues. The State sought to prevent Capone from introducing evidence of prior felony convictions to impeach the testimony of Glass and Voss. Pursuant to Idaho Rule of Evidence 404(b), the State also gave notice of its intent to use evidence of a past strangulation attempt and federal firearm crimes by Capone. After hearing argument, the [trial] court ruled that Glass and Voss's prior felony convictions for burglary were not relevant to their credibility and reserved its ruling on the admissibility of the 404(b) evidence until trial.

At trial, the State relied heavily on Stone's testimony. Stone testified that he was at Capone's shop on April 16, 2010. Capone went outside to talk with Anderson. Stone heard a noise and went outside to find Capone strangling Anderson. Anderson was still moving and Stone asked Capone what he was doing. Capone instructed Stone to get a tarp. Stone went inside and searched for a tarp. When he came back out, Anderson was dead. Stone testified that he and Capone wrapped Anderson's body in the tarp and a chain and drove to Lewiston, where they threw her body into the river from a bridge.

The jury found Capone guilty of all charges. Following the verdict, Capone learned of a statement Stone made to Tyler Byers while the two were cellmates in July of 2013. Stone told Byers that they would not find Anderson's body in the river because she was not in the river. Capone filed a motion for a new trial based on this newly discovered information. After hearing the motion, the [trial] court found that the new evidence did not merit a new trial as it was merely impeachment evidence and likely would not produce an acquittal. Capone timely appealed his conviction and the denial of his motion for a new trial.

*State v. Capone*, 164 Idaho 118, 121-22, 426 P.3d 469, 472-73 (2018).

On appeal, Capone argued the trial court made several errors, including denying his motion to impeach Glass and Voss with their previous felony burglary convictions and denying his motion for a new trial. *Id.* at 123, 426 P.3d at 474. The Idaho Supreme Court held that while Glass's and Voss's previous felony convictions were relevant to their credibility, any error in the exclusion of that evidence was harmless because:

[b]oth Glass and Voss testified that they were incarcerated at the time Capone made incriminating statements to them. In light of the jury's awareness of their incarceration and Stone's testimony that he saw Capone commit the murder, we are convinced beyond a reasonable doubt that the error did not contribute to the verdicts.

*Id.* at 127, 426 P.3d at 478. The Court additionally found the trial court did not err in concluding that Capone failed to demonstrate the new evidence probably would have produced an acquittal, since:

Capone spent a full day impeaching Stone with inconsistent statements he had made to police before November of 2013. At trial, Stone repeatedly stated that he had been living a lie and consistently lied to others about Anderson's disappearance before November 2013 when he decided to tell the police the truth. Stone's statement to Byer was made during the time in which Stone admitted to having lied about what happened to Anderson.

*Id.* at 128, 426 P.3d at 479. The Court affirmed Capone's judgment of conviction and the trial court's order denying Capone's motion for a new trial. *Id.*

3

Capone filed a petition for post-conviction relief and the district court appointed post-conviction counsel. With the assistance of counsel, Capone filed a second and then a third amended petition for post-conviction relief. The third amended petition included claims of prosecutorial misconduct and ineffective assistance of trial counsel for failing to seek additional records of dives in the Snake River by officials to find Anderson's body. Capone provided two personal affidavits and an affidavit from his post-conviction counsel as support for his claims.

The State moved for summary dismissal of Capone's third amended petition for post-conviction relief. The State argued that Capone's prosecutorial misconduct claims were forfeited pursuant to I.C. § 19-4901(b) because he could have raised the claims on direct appeal in his underlying criminal proceeding and did not show why the claims raised a substantial doubt about his guilt and, in the exercise of due diligence, why he could not raise the claims sooner. Alternatively, the State argued that even if Capone had not forfeited his prosecutorial misconduct claims, they were properly dismissed because each claim was conclusory, unsupported by any admissible evidence, and failed to allege a genuine issue of material fact. Finally, the State alleged that Capone's ineffective assistance of counsel claim was clearly disproven by the record because trial counsel's decision not to pursue additional dive records was a reasonable trial strategy. The State moved the district court to take judicial notice of the record in the underlying criminal case and attached some documents from the criminal appellate record to the motion.[1]

Capone opposed the State's motion for summary dismissal, arguing generally that his claims were not barred by I.C. § 19-4901(b) and raised genuine issues of material fact. Capone did not specifically address the State's arguments that the claims were forfeited because they could have been brought on direct appeal or could have been raised in earlier proceedings. The State filed a reply, reiterating many of its previous arguments, and included affidavits from both of Capone's trial counsel. In one of the affidavits, Capone's trial counsel attested that it was a strategic decision not to seek out additional dive records or request additional searches of the Snake River because such actions had the potential to turn a positive fact (the lack of evidence

---

[1] The district court did not enter an order granting the State's motion to take judicial notice. However, the district court's dismissal order plainly quoted and relied on the documents provided by the State, and specifically cited the State's motion to take judicial notice. Capone did not object to the motion or the district court's reliance on any documents from the record in the district court or on appeal.

corroborating Stone's testimony about where Anderson's body had been) into discovery of inculpatory evidence.

The district court held a summary dismissal hearing. During the hearing, Capone did not address the applicability of I.C. § 19-4901(b). The district court found Capone's prosecutorial misconduct claims were forfeited pursuant to I.C. § 19-4901(b) because they could have been raised on direct appeal. The district court further held that Capone did not qualify for the exception to forfeiture set forth in the statute because the claims did not raise a substantial doubt about Capone's guilt and Capone did not explain why he did not raise the claims earlier. The district court further found that even if Capone's prosecutorial misconduct claims were properly raised in the post-conviction action, Capone failed to provide admissible evidence to support his otherwise conclusory allegations of error or allege a genuine issue of material fact that the alleged errors would have had any impact on the outcome of the underlying criminal case. The district court similarly found Capone's ineffective assistance of counsel claim did not allege a genuine issue of material fact because the record showed that his trial counsel made the strategic decision not to seek additional dive records or request additional searches of the Snake River. Accordingly, the district court entered a judgment summarily dismissing Capone's third amended petition for post-conviction relief. Capone appeals.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

Capone argues the district court erred by summarily dismissing his third amended petition for post-conviction relief because his prosecutorial misconduct claims were not forfeited pursuant to I.C. § 19-4901(b) and raised genuine issues of material fact. Additionally, Capone argues the

5

district court erred by summarily dismissing his ineffective assistance of trial counsel claim because he alleged a genuine issue of material fact. The State asserts the district court did not err.

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades*, 148 Idaho at 249, 220 P.3d at 1068; *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary dismissal; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho 104, 190 P.3d 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

## A. The District Court Did Not Err by Finding Capone Forfeited His Prosecutorial Misconduct Claims

Relevant to this appeal, Capone alleged five prosecutorial misconduct claims. Capone argues the State committed prosecutorial misconduct by: (1) eliciting testimony from Stone which the State knew was false and failing to correct it pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959); and (2) failing to correct Detective Hally's misconduct, which Stone asserted included witness intimidation and destroying and falsifying evidence. Capone also brought three claims of prosecutorial misconduct based on assertions that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by: (1) withholding information that Voss was working as a confidential informant at the time he testified at trial; (2) withholding information that Glass was facing a "third strike" prosecution in Washington; and (3) failing to disclose additional dive records of the Snake River searches for physical evidence of the crime.

The scope of post-conviction relief is limited. *Knutsen v. State*, 144 Idaho 433, 438, 163 P.3d 222, 227 (Ct. App. 2007). Idaho Code § 19-4901(b) provides, in relevant part, that the remedy provided by the Uniform Post-Conviction Procedures Act:

> is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of an appeal from the sentence or conviction. Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings, unless it appears to the court, on the basis of a substantial factual showing by affidavit, deposition or otherwise, that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier.

Because "the language of I.C. § 19-4901(b) merely requires that the petitioner *could* have raised the claim on direct appeal in the underlying criminal case and failed to do so," it is not necessary for a petitioner to have been aware that he could have raised a claim on direct appeal to forfeit the opportunity to raise the claim in a post-conviction proceeding. *Black v. State*, 165 Idaho 100, 105, 439 P.3d 1272, 1277 (Ct. App. 2019) (emphasis added).

Idaho appellate courts have repeatedly held petitioners forfeited constitutional claims in post-conviction actions when the claims could have been raised on direct appeal from the underlying criminal conviction. In *Baldwin v. State*, 145 Idaho 148, 177 P.3d 362 (2008), the Idaho Supreme Court held that Baldwin forfeited his constitutional claim by not raising it on direct appeal even when the appellate record on direct appeal was meager. *Id*. at 152 n.4, 177 P.3d at 366 n.4. The Supreme Court noted that the meagerness or insufficiency of an appellate record is generally a result of trial counsel's inactions and, as a result, the claim was more properly brought as a claim of ineffective assistance of trial counsel, rather than a substantive constitutional challenge. *See id.*; *see also Grove v. State*, 161 Idaho 840, 850-51, 392 P.3d 18, 28-29 (Ct. App. 2017) (holding petitioner forfeited constitutional claim by not raising it on direct appeal even when relief was unlikely to be granted under applicable fundamental error review because of insufficient appellate record). Thus, the appellate courts have expressed that the proper way to challenge unpreserved, constitutional trial error is through a claim of fundamental error on direct appeal in the criminal case or through an ineffective assistance of trial counsel claim in a post-conviction action, not through a substantive constitutional claim in a petition for post-conviction relief. *Black*, 165 Idaho at 106, 439 P.3d at 1278; *see Grove*, 161 Idaho at 850-51, 392 P.3d at 28-29.

The Idaho Supreme Court reiterated this standard in *Thumm v. State*, 165 Idaho 405, 447 P.3d 853 (2019). Thumm raised six claims of prosecutorial misconduct in his post-conviction petition, including a claim related to the prosecutor's statements during closing argument in his underlying criminal case. *Id*. at 424, 447 P.3d at 872. The prosecutor's closing argument referenced a description of the crime scene and alleged Thumm used beer bottles as weapons

during the underlying altercation. *Id.* at 425, 447 P.3d at 873. Thumm argued the State's comments constituted prosecutorial misconduct because the State knew the statements were contrary to the evidence contained in a fingerprint report of the bottles, which was not admitted at trial and was the only evidence by which Thumm could rebut the prosecutor's statements. *Id.* The report was not admitted at trial because Thumm's trial counsel objected to the admission of the report based on the late disclosure of the report.[2] *Id.* at 424, 447 P.3d at 872.

The district court summarily dismissed Thumm's petition and Thumm appealed. *Id.* at 411, 447 P.3d at 859. On appeal, Thumm argued the State's references to his use of the beer bottles constituted prosecutorial misconduct because Thumm could not rebut the State's references without the fingerprint report. *Id.* at 425, 447 P.3d at 873. He further argued the claim was properly brought in his post-conviction case rather than on direct appeal from his criminal conviction because without the fingerprint report in the direct appeal record, the record was necessarily insufficient to allow a merits review of the claim. *Id.* The Supreme Court rejected Thumm's argument, holding that:

> There were no objections at trial to the closing argument referencing the use of bottles as weapons. As the district court noted, even without [trial counsel's] contemporaneous objections to the prosecutor's misconduct at trial, appellate counsel could have raised the issue on appeal. In his brief, Thumm presented no evidence that the issue could not, in the exercise of due diligence, have been presented earlier. Instead, [Thumm] conclusively states, in a footnote, that the prosecutorial misconduct claim could not have been raised on appeal because the fingerprint report was not part of the record. However improper the statement may have been, Thumm could have raised this issue on direct appeal, based on the very exclusion of the fingerprint report.

*Id.* at 426, 447 P.3d at 874. The Court held Thumm forfeited this claim in the post-conviction proceeding. *Id.*

Taking the statutory and case law into account, if Capone's prosecutorial misconduct claims could have been raised on direct appeal, the claims are forfeited pursuant to I.C. § 19-4901(b) unless Capone can show by substantial facts that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due

---

[2]    It is not clear whether the trial court granted the motion or whether the State simply agreed not to use the fingerprint report in its case-in-chief. *See Thumm v. State*, 165 Idaho 405, 424, 447 P.3d 853, 872 (2019). If the trial court did not grant the motion because the State agreed not to use the report in its case-in-chief, then there was no ruling precluding Thumm's counsel from admitting the report on cross-examination or in the motion for a new trial.

9

diligence, have been presented earlier. A review of the record in this case shows that Capone could have raised each of his prosecutorial misconduct claims on direct appeal because the factual support for each of Capone's claims is drawn from the record in the criminal case. Capone does not cite to or articulate what, if any, relevant evidence he learned of or obtained post-trial and, therefore, was unavailable during his direct appeal. Capone also failed to preserve a challenge to the district court's findings that the statutory exception to forfeiture provided by I.C. § 19-4901(b) did not apply, but even if the issue was preserved, Capone fails to show by way of substantial factual support that the claim casts substantial doubt about the finding of guilt and that the claim could not have been raised earlier. Each claim will be addressed in turn.

1.      **Capone's claim of prosecutorial misconduct based on an alleged *Napue* violation**

In his third amended petition, Capone alleged the prosecutor committed misconduct pursuant to *Napue* when the prosecutor elicited testimony from Stone that the prosecutor knew was false and then failed to correct the alleged false testimony. Specifically, Capone asserted that Stone lied about: (1) the number of times he was at Capone's shop; (2) the shop's contents (that there were metal garbage cans, garbage bags, a bleach-based cleaner, and nylon ropes present); (3) the placement of the Yukon Anderson was driving; (4) that he was able to see Anderson in the Yukon despite the car having darkly tinted windows; (5) that he attempted to retrieve a chain from his home; and (6) whether he received a deal for cooperating with the investigation. Capone also argued the State should have known this testimony was false because of Stone's unreliability, and Capone concluded that "by using an inherently unreliable witness, the State violated [his] due process right to a fair trial." The district court held this claim was forfeited pursuant to I.C. § 19-4901(b) because it could have been raised on direct appeal and did not meet the statutory exception for forfeiture. On appeal, Capone argues the district court erred.

In order to assess whether the district court correctly concluded the claim could have been raised on direct appeal, we must address the nature of the claim. "A defendant establishes a *Napue* violation upon showing: (1) the testimony was false; (2) the prosecutor knew or should have known it was false; and (3) the testimony was material." *State v. Wheeler*, 149 Idaho 364, 368, 233 P.3d 1286, 1290 (Ct. App. 2010). For the purposes of a *Napue* claim, testimony is material when there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *State v. Lankford*, 162 Idaho 477, 505-06, 399 P.3d 804, 832-33 (2017).

The crux of Capone's claim of prosecutorial misconduct pursuant to *Napue* is that Stone was the State's primary witness but was so unreliable that Stone's falsity could have affected the outcome of the jury. Challenges to Stone's lack of credibility could have been raised on direct appeal because the evidence on which Capone relies is all drawn from the underlying criminal record. Capone's affidavit cites only to documents from the underlying criminal case as factual support for his claim. Because the facts on which Capone relies are drawn from the underlying criminal record, the information was available to criminal trial and appellate counsel and, thus, the claim could have been raised on direct appeal. Moreover, a review of the trial transcript, which the district court judicially noticed, further indicates the factual support for the claim was available to criminal trial and appellate counsel and, thus, the claim could have been raised on direct appeal.

For example, during the criminal trial, Capone's counsel spent a day cross-examining Stone about the inconsistent statements he made. Capone's counsel also questioned witnesses about whether Capone's shop had metal garbage cans or large garbage can liners and questioned Stone about whether he was offered an immunity deal for cooperation in the investigation. During closing argument, Capone's trial counsel thoroughly discussed Stone's lack of credibility and that Stone's testimony about the placement of the Yukon, the ability to see Anderson through the Yukon's tinted windows, and the use of bleach in Capone's shop had no evidentiary support. Capone's trial counsel also reiterated that Stone had been offered an immunity agreement. Capone's motion for a new trial similarly addressed Stone's unreliability, and the denial of that motion was addressed on direct appeal. *Capone*, 164 Idaho at 128, 426 P.3d at 479. Moreover, Capone challenged Stone's credibility in his motion for a new trial and appealed from the denial of that motion, demonstrating that the claim could have been raised on direct appeal. Thus, because the factual basis for the claim was available to both trial and appellate counsel, the district court did not err in finding the issue could have been raised on direct appeal and was forfeited pursuant to I.C. § 19-4901(b) unless Capone established the statutory exception to forfeiture applies to his *Napue* claim.

In order to argue on appeal that the statutory exception to forfeiture applied to his case, Capone must have raised the issue in the district court. He must have shown by substantial facts that: (1) the asserted basis raises a substantial doubt about the reliability of the finding of guilt; *and* (2) in the exercise of due diligence, the claim could not have been raised earlier. The district

11

court found Capone failed to make the requisite showing on either prong. The district court did not err.

In the district court, Capone failed to provide any argument or evidence explaining why his *Napue* claim, and for that matter, any of his other prosecutorial misconduct claims, could not, in the exercise of due diligence, have been presented earlier. In the State's motion for summary dismissal, the State explicitly argued that all of Capone's prosecutorial misconduct claims were forfeited pursuant to I.C. § 19-4901 because the claims could have been raised on direct appeal and Capone did not show the statutory exception to forfeiture applied. Although Capone filed a response, he did not specifically address or provide substantial factual support, argument, or authority explaining why he could not have brought his *Napue* or any other of his prosecutorial misconduct claims earlier.

Similarly, at the summary dismissal hearing, the State again argued that the prosecutorial misconduct claims could have been raised on direct appeal and that Capone did not show why the claims could not have been raised earlier. Capone again did not address the State's arguments. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Both the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal. *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). By not addressing why his prosecutorial misconduct claims could not have been raised earlier, Capone fails to preserve a challenge to the district court's finding that he did not show that the I.C. § 19-4901 exception for forfeiture applied to his *Napue* claim or any of his other claims of prosecutorial misconduct. Additionally, the district court can be affirmed on the unchallenged ground. *See State v. Goodwin*, 131 Idaho 364, 366, 956 P.2d 1311, 1313 (Ct. App. 1998) (upholding denial of motion to suppress based on trial court's alternative ruling that was unchallenged on appeal).

Because the district court found the *Napue* claim of prosecutorial misconduct could have been raised on direct appeal and Capone failed to preserve a challenge to the district court's finding that he did not meet the statutory exception to forfeiture, Capone's *Napue* claim of prosecutorial misconduct was forfeited for purposes of post-conviction.

Even if Capone had preserved a challenge to the district court's conclusion that he did not show his *Napue* claim met the statutory exception for forfeiture, his claim fails because Capone did not show by way of substantial factual support that the claim raises a substantial doubt about

12

the reliability of his guilt[3] and could not have been raised earlier.  First, Capone fails to make even a prima facie showing, let alone a substantial factual showing, that his *Napue* claim raises a substantial doubt about this reliability of his guilt.  The documents on which Capone relies to support his *Napue* claim were not attached to or part of his third amended post-conviction petition, rendering the assertions in his affidavit bare, conclusory, and unsupported.  Capone acknowledges the documents on which he relies for this claim were not in or attached to his post-conviction petition, stating:  "While the discovery is not attached, this again is just a summary proceeding.  The relevant pages of discovery would come in at the evidentiary hearing with Mr. Capone explaining their relevance."  However, a petitioner must provide sufficient factual support for the claim in or attached to his post-conviction petition or state why the supporting evidence is not included.  *Wolf*, 152 Idaho at 66-67, 266 P.3d at 1171-72.  Because he did neither, Capone has failed to support his *Napue* claim with sufficient admissible evidence.

This Court is not required to accept the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law.  *Roman*, 125 Idaho at 647, 873 P.2d at 901; *Baruth*, 110 Idaho at 159, 715 P.2d at 372.  If the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, then the claim may be summarily dismissed.  *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *DeRushé*, 146 Idaho at 603, 200 P.3d at 1152.  Capone's failure to establish a prima facie showing for the claim means he has similarly failed to support his claim with substantial evidence.

But even if we were to overlook that procedural flaw, a review of Capone's claim fails to cast substantial doubt on his guilt.  Stone's credibility was addressed extensively at trial through a lengthy cross-examination about Stone's inconsistent statements that included at least some of the categories of testimony Capone now alleges affected Stone's credibility.  Capone fails to show

---

[3]     Capone asserts that as it relates to his claim regarding Stone's credibility, the district court applied an incorrect standard when it held, "Capone has failed to establish there is *a reasonable likelihood* that the alleged false testimony could have affected the jury's finding of guilt," as opposed to the correct standard of "*any reasonable likelihood*."  (Emphasis added.)  However, Capone has not provided the Court with any legal authority supporting the proposition that "a" is different than "any" in this context or that reversal of a summary dismissal in its entirety is appropriate where a court is alleged to misapply the appropriate legal standard to one or more claims within the petition.  Consequently, he has waived this issue on appeal.  *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("A party waives an issue cited on appeal if either authority or argument is lacking.").

13

how the remaining minor discrepancies in Stone's testimony impeached his credibility to the extent that there is a substantial doubt about the finding of Capone's guilt. As a result, Capone's *Napue* claim fails to cast a substantial doubt about his guilt as required under the first prong of the forfeiture exception.

As to the second prong of the exception, for the first time on appeal, Capone argues the claim could not have been raised on direct appeal because his post-conviction affidavit was not part of the appellate record. While true, the absence of Capone's affidavit in the appellate record in his underlying criminal case did not affect his opportunity to raise the *Napue* prosecutorial misconduct claim on direct appeal. First, as noted above, Capone's affidavit on this issue relies in large part on evidence not in or attached to his third amended petition, rendering the statements in his affidavit bare, conclusory, and unsupported by admissible evidence. As a result, the affidavit provides no additional evidence that was otherwise unavailable to trial or appellate counsel. Second, to the extent it is the content of the affidavit that is relevant, the content of the affidavit is the citations to the record in the underlying criminal case and the comparisons between various pieces of evidence and Stone's trial testimony. Stone's affidavit does not include any factual information explaining why trial counsel or appellate counsel could not make the same comparisons earlier in the proceedings. Nothing in Capone's affidavit or third amended petition show by substantial evidence why the claim could not have been raised earlier in the proceeding as required under the second prong of the forfeiture exception.

Based on the above, the district court did not err when it found Capone's *Napue* claim of prosecutorial misconduct was forfeited for purposes of post-conviction proceedings.

### 2. Capone's claim of prosecutorial misconduct based on Det. Hally's statements

Capone next asserted in his third amended petition that the State committed prosecutorial misconduct when it failed to address what Capone characterized as Det. Hally's misconduct. Specifically, Capone asserts Det. Hally lied when he stated that Capone admitted to stalking Anderson and sending harassing messages to her phone and email, and "[a]t a minimum, Mr. Capone knows what he told to Det. Hally, and it is at odds with what Det. Hally testified to." The district court held this claim was forfeited pursuant to I.C. § 19-4901(b) because it could have been raised on direct appeal and did not meet the statutory exception for forfeiture. The district court did not err.

14

Capone could have raised his prosecutorial misconduct claim related to Det. Hally's statements on direct appeal because the evidence on which Capone relies is drawn from the underlying criminal record. Det. Hally testified about Capone's stalking and harassment of Anderson during the criminal trial. However, defense counsel did not object to those statements and instead, questioned Det. Hally about his testimony and the underlying conversation between Det. Hally and Capone. Det. Hally's statements regarding Capone's stalking and harassment of Anderson were also included as part of the presentence investigation report. During the sentencing hearing, Capone's counsel objected to these statements being included in the presentence investigation report. Capone argued these statements should not be relied on at sentencing:

> The Defendant also objects to statements made in the section entitled, Investigations, Comments and Analysis of Defendant's Condition, which makes reference to the statements Mr. Capone allegedly made to Hally. Th[ese are] the same statements *that were suppressed at trial . . . .*
> Defendant objected to the statement in the official version at Page 4 that attributes a statement to Mr. Capone that he stated that he was the one who was stalking and harassing Rachel Anderson. Mr. Capone denies that he ever told Hally that he was stalking Rachel Anderson. There is no report wherein [Mr. Capone] told anyone that he was stalking Rachel Anderson.
> The defendant objects to the statement in the official version that states that he sent numerous messages and emails to scare her. Mr. Capone denies that he ever said he was trying to scare Rachel Anderson, and no evidence of such a statement was produced.

(Emphasis added.)

Because the factual basis for the claim was available to both criminal trial and appellate counsel, the district court did not err in finding the issue could have been raised on direct appeal and was forfeited pursuant to I.C. § 19-4901(b) unless Capone established the statutory exception to forfeiture applies to this claim. As discussed above, Capone failed to preserve any challenge to the district court's finding that he did not show the statutory exception for forfeiture applied to this claim.

However, even when the claim is reviewed on the merits, Capone's claim fails because he did not show that this claim raises a substantial doubt about his guilt and it could not have been raised earlier, as required to qualify for the forfeiture exception. First, in his third amended petition, Capone alleged that Det. Hally fabricated evidence and intimidated witnesses and this misconduct "constitute[d] police abuse of citizens, in such a fashion that [led] to the complete perversion[] of the judicial process." Capone neither identifies nor supports the legal theory

15

underlying this claim. It is well established that a party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Second, Capone fails to allege how the statements that were admitted at trial cast substantial doubt upon the reliability of the jury's finding of guilt, particularly since those statements were subject to cross-examination. Third, Capone provided no admissible evidence to the district court that Det. Hally fabricated Capone's statements because Capone failed to include in, or attach to, his third amended petition the records upon which he relies. Capone also failed to include any affidavits from any party Det. Hally allegedly harassed. Fourth, Capone's assertion that Det. Hally's statements in the police report are not accurate does not constitute admissible evidence that those statements are false. Thus, Capone failed to show by substantial factual support that Det. Hally's statements or actions cast substantial doubt about the finding of guilt.

Capone similarly fails to explain by way of substantial facts, why the claims could not have been raised in earlier proceedings. The transcript indicates that trial counsel cross-examined Det. Hally about his statements at trial and Capone's trial counsel objected to the admission of the statements during the sentencing hearing and indicated that additional similar statements had actually been suppressed at trial. Because Capone objected, the claim was preserved for direct appeal and Capone has failed to show why the claim could not have been raised sooner. Because the claim could have been raised on direct appeal, but was not, and Capone did not establish by way of substantial facts that he met the statutory exception to forfeiture, the district court did not err in finding the claim is forfeited pursuant to I.C. § 19-4901(b) for purposes of post-conviction.

### 3. Capone's claims of prosecutorial misconduct based on alleged *Brady* violations

Next, we turn to Capone's post-conviction claims of prosecutorial misconduct based on alleged *Brady* violations. Capone raised the following *Brady* claims in his third amended petition: (1) the State failed to disclose that Voss was working as a confidential informant at the time he testified against Capone at trial; (2) the State failed to disclose that Glass was subject to a "third strike" sentencing enhancement based on his criminal record; and (3) the State failed to disclose additional dive records related to the search of the Snake River for evidence of Anderson's body or other evidence of the crime. On appeal, Capone argues the district court erred in finding the claims were forfeited pursuant to I.C. § 19-4901(b). The State argues the district court correctly concluded Capone forfeited these claims.

16

Pursuant to *Brady*, due process requires all material exculpatory evidence known to the State or in its possession be disclosed to the defendant. *Brady*, 373 U.S. at 87; *Grube v. State*, 134 Idaho 24, 27, 995 P.2d 794, 797 (2000). Establishing a *Brady* violation requires a three-part showing: (1) the evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) the State must have suppressed that evidence, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). For a *Brady* claim, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A petitioner establishes a "reasonable probability" of a different result when the evidence withheld undermines confidence in the outcome of the trial. *Lankford*, 162 Idaho at 505-06, 399 P.3d at 832-33. Thus, evidence that is material is also likely to establish prejudice.

Generally, allegations of prosecutorial misconduct based on a *Brady* violation can be brought in post-conviction actions, *Thumm*, 165 Idaho at 422, 447 P.3d at 870, because the factual underpinnings of the *Brady* claim are not discovered until after the direct appeal is concluded. However, *Brady* claims are derived from prosecutorial misconduct claims. *Lankford*, 162 Idaho at 503, 399 P.3d at 830. Prosecutorial misconduct claims are regularly reviewed on direct appeal to determine whether the judgment should be vacated and a new trial granted. *Id.* at 493-94, 399 P.3d at 820-21 (holding although prosecutorial misconduct is not basis for granting motion for new trial, claims of prosecutorial misconduct could be reviewed on direct appeal where such claims are regularly reviewed). As such, an allegation of prosecutorial misconduct for a *Brady* violation is subject to the same limitations of I.C. § 19-4901(b) as any other prosecutorial misconduct claim.

The holding in *Thumm* supports this reasoning. Thumm alleged the State committed prosecutorial misconduct by violating *Brady* for its late disclosure of a fingerprint report. *Thumm*, 165 Idaho at 422, 447 P.3d at 870. The State disclosed the fingerprint report to Thumm's trial counsel approximately one week before trial. *Id.* at 424, 447 P.3d at 872. However, Thumm's trial counsel and the State previously stipulated to a protective order that precluded trial counsel from disclosing names of witnesses or physically transferring reports to Thumm. *Id.* at 416, 447 P.3d at 864. In his post-conviction petition, Thumm asserted he had not received a copy of the

17

fingerprint report before or during trial.[4]  *Id*.  The fingerprint report was not admitted during the trial and, thus, was not part of the appellate record.  *Id*. at 426, 447 P.3d at 874.  In Thumm's post-conviction case, the Supreme Court addressed the claim on the merits and affirmed the summary dismissal of the claim, reasoning that the fingerprint report was not willfully suppressed because it was ultimately disclosed and trial counsel had sufficient opportunity to review the report and objected to its admission.  *Id*. at 424, 447 P.3d at 872.  The Court further concluded that after reviewing the entire record, the exclusion of the report did not undermine its confidence in the verdict.  *Id*.

The Supreme Court recognized that Thumm's prosecutorial misconduct claim based on an alleged *Brady* violation for the State's late disclosure of the fingerprint report had no factual support in the record.  Without any evidence of the content of the report or Thumm's knowledge of the fingerprint report in the appellate record, there was no basis upon which Thumm could make a *Brady* claim on direct appeal.  Thus, the claim was properly brought for the first time in post-conviction.  That is not the case here.  The factual underpinnings of each of Capone's *Brady* claims were known during his criminal trial, had factual support in the underlying criminal record, and as a result, each claim could have been raised on direct appeal as a claim of prosecutorial misconduct.

> a.  **Capone's *Brady* claim based on Voss's status as a confidential informant**

Capone's first *Brady* claim alleged the State did not disclose that Voss was a confidential informant at the time he testified at trial.  Capone asserts that had Voss's status as a confidential informant and his motivation been known at trial, it would have been "useful for impeachment." The district court held this claim was forfeited pursuant to I.C. § 19-4901(b) because it could have been raised on direct appeal and did not meet the statutory exception for forfeiture.  The district court did not err.

Capone's affidavit cites to pretrial discovery in the underlying criminal case as support that Voss worked as a confidential informant in other cases, was trying to get information from Capone, and was trying to leverage that information to his advantage.  This citation demonstrates that the

---

[4]  Thumm alleged an ineffective assistance of trial counsel claim for failing to provide the fingerprint report to him.  Thumm argued that had the report been provided to him, he would have noticed the exculpatory nature of the report.  In addressing the deficient performance prong of the *Strickland* analysis, the Idaho Supreme Court noted that "counsel likely should have shared the report with her client." *Thumm v. State*, 165 Idaho 405, 416, 447 P.3d 853, 864 (2019).

factual basis for the claim was available to both criminal trial and appellate counsel, and thus, the claim could have been raised on direct appeal. A further review of the criminal trial transcript, of which the district court took judicial notice, similarly demonstrates that the factual basis for the claim was available to trial and appellate counsel and, thus, the claim could have been raised in direct appeal.

For example, Voss testified during the criminal trial that he had been working with the investigators while he was incarcerated with Capone and was trying to get Capone to confess to Anderson's murder. Voss testified that Capone told him that Anderson "wouldn't be coming back. They wouldn't find her." Voss further testified that when he relayed Capone's statements to a detective, the detective asked Voss if he could get Capone to admit to the murder. Voss's strategy was to "catch [Capone] first thing in the morning when he's not awake at all, hardly awake, you know, not thinking right." This testimony illustrates that the claim regarding Voss's status as a confidential informant at the time he elicited statements from Capone was addressed during the underlying criminal proceeding.

Capone argues that Voss's status as a confidential informant at the time of trial (rather than pretrial) would have explained Voss's motive to testify against Capone, thus, impeaching his testimony, and it was this evidence that was not disclosed. However, Voss was cross-examined on his motive to testify against Capone, and Capone's trial counsel emphasized during closing argument that Voss likely had an ulterior motive for working with law enforcement because he wanted to be released from incarceration, making him an unreliable witness. Because Capone did not provide evidence that was obtained post-trial and because Voss's motive to testify and his lack of credibility were addressed in the trial court, Capone failed to show the district court erred in finding this claim could have been raised on direct appeal. Accordingly, the claim is forfeited for purpose of post-conviction unless Capone can show he meets the statutory exception to forfeiture.

Capone failed to show by way of substantial facts that the statutory exception to forfeiture applied to this claim. First, the claim does not raise a substantial doubt about the reliability of his guilt because Capone provided no admissible evidence to support his assertion that at the time of trial, Voss was working as a confidential informant for the Bonner County Sheriff's Office or that trial counsel was unaware of Voss's status as an informant at the time of trial. Without that evidence, he cannot establish the State withheld any information and, thus, cannot establish the

19

first prong his *Brady* claim by even a prima facie showing, let alone a substantial factual showing. He similarly fails to establish any of the other elements of a *Brady* claim by admissible evidence.

Even if Capone can get past that procedural hurdle, he still fails to show this *Brady* claim casts substantial doubt upon the finding of guilt because the jury was aware through Voss's testimony that he was working as an informant at law enforcement's request. During closing argument, Capone's trial counsel highlighted that Voss may have an ulterior motive for working with law enforcement to try to procure an incriminating statement from Capone, stating: "The problem with Joshua Voss is that he really saw this as an opportunity to get out of jail and nothing more." In light of this testimony, and the lack of any substantial factual support for this claim, Capone did not make even a prima facie showing that the State failed to disclose material, exculpatory evidence related to Voss's status as a confidential informant at the time Voss testified against Capone. As a result, his claim does not cast substantial doubt upon the reliability of Capone's conviction.

As to the second prong required under the statutory exception to forfeiture, Capone's affidavit does not provide by way of substantial facts why the claim could not have been raised earlier. As addressed in the *Napue* claim, Capone failed to address this issue in the trial court. Because all of the cited factual support for this claim was available to criminal trial and appellate counsel, the district court did not err in concluding the claim could have been raised on direct appeal. Capone failed to show by substantial evidence the statutory exception to forfeiture applied; as such, the district court did not err in finding this claim was forfeited for purposes of post-conviction proceedings.

### b. Capone's *Brady* claim based on Glass's criminal record

Capone's second alleged *Brady* claim was that because of the number of Glass's prior felony convictions, Glass was subject to a "third strike" sentencing enhancement on pending charges in Washington, which affected Glass's motive in testifying against Capone. The district court held this claim was forfeited pursuant to I.C. § 19-4901(b) because it could have been raised on direct appeal and did not meet the statutory exception for forfeiture. The district court did not err.

In his affidavit, Capone provided no admissible evidence on any of the elements of a *Brady* claim. Moreover, a review of the trial transcript, of which the district court took judicial notice, indicates that Capone was aware of the factual underpinnings of this claim during his criminal

20

trial. During trial, Capone's counsel asked Glass if he was facing felony burglary and theft charges at the time he informed on Capone. The State objected, arguing, "[t]hese have already been subject to a prior ruling." The State then clarified that it had filed a motion in limine to prohibit the defense from mentioning or introducing evidence of Glass's criminal history. The district court sustained the objection and struck the questions and Glass's answers.[5] Capone's trial counsel argued to the court that "the idea that [Glass] is facing charges and facing felony charges, and serious felony charges in Asotin County, [Washington,] is very relevant." The State noted that it had previously filed a motion in limine prohibiting the defense from mentioning or introducing evidence of Glass's criminal history and the motion was granted. Defense counsel agreed he would not go into Glass's prior convictions. The district court permitted Capone's trial counsel to cross-examine Glass on whether Glass was facing charges; whether Glass had attempted to obtain consideration on those charges in exchange for his testimony against Capone; and admitted Defendant's Exhibit R, which was a copy of Glass's proposed plea agreement with the Asotin County prosecutor on a pending felony charge.[6]

Glass repeatedly testified that he did not receive any consideration or benefit in exchange for his testimony against Capone. In closing argument, Capone's trial counsel highlighted issues with Glass's credibility, stating:

> We also know that at the time Brent Glass made the statements to the police, he was facing criminal charges. And we know that he desperately wanted to get out of jail.
> Remember, he testified that he, like most people, would be willing to lie to get out of jail. And that's exactly what he did.

Subsequently, on direct appeal in the criminal case, Capone argued the district court erred in prohibiting him from impeaching Glass with one of Glass's prior burglary convictions. As support for his argument, Capone noted the State filed a motion in limine to preclude reference to Glass's prior record. *Capone*, 164 Idaho at 122, 426 P.3d at 473. As part of that motion, the State disclosed Glass's prior conviction for a felony burglary. *Id*. The Idaho Supreme Court agreed that

---

[5]    Capone has failed to provide a copy of the State's motion in limine. The party appealing a decision of the district court bears the burden of ensuring that this Court is provided a sufficient record for review of the district court's decision. *Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003). "When a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the district court." *Id.*

[6]    Defendant's Exhibit R is not in included in the Clerk's Record.

the trial court erred in prohibiting a reference to Glass's prior burglary conviction, but found the error harmless. *Id*. at 127, 426 P.3d at 478. Capone was aware of Glass's criminal history and pending criminal charges during the underlying criminal proceeding and, therefore, this claim could have been raised on direct appeal. Accordingly, the claim is forfeited for purpose of post-conviction unless Capone can show he meets the statutory exception to forfeiture.

Capone failed to show by way of substantial facts that the statutory exception to forfeiture applied to this claim. Capone provided no admissible evidence on any of the elements of the *Brady* claim. Without that evidence, he did not make even a prima facie showing, let alone a substantial factual showing, on any element of his *Brady* claim.

Moreover, even when reviewed on the merits, Capone failed to show Glass's criminal record casts substantial doubt about the reliability of the finding of guilt and that the claim could not have been brought earlier. As the record in the criminal case demonstrates, Capone's trial counsel was aware of Glass's criminal history and his pending felony charges in Washington. Because Capone knew that Glass had prior felony convictions and was facing two new felony charges, Capone had sufficient information to know Glass could face persistent violator sentencing enhancements if he were convicted of any additional felonies. When a petitioner has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government and, therefore, can be no *Brady* violation. *State v. Hall*, 163 Idaho 744, 831, 419 P.3d 1042, 1129 (2018). Because Capone failed to provide any admissible evidence that the State failed to disclose material, exculpatory evidence related to Glass's pending "third strike" prosecution in Washington and because Capone was aware of this information during his criminal trial, his claim does not cast substantial doubt upon the reliability of Capone's conviction.

As to the second prong of the forfeiture exception, Capone provided no statements in his affidavit explaining why the claim could not have been raised sooner. As addressed in the *Napue* claim, Capone failed to address this issue in the trial court. Because all of the information upon which Capone relied was available to trial and appellate counsel, the district court did not err in concluding the claim could have been raised on direct appeal. Because Capone failed to provide any admissible evidence that the statutory exception to forfeiture applied to his claim, the district court did not err in finding this claim was forfeited for purposes of post-conviction proceedings.

### c.     Capone's *Brady* claim relating to the dive records

Capone's final *Brady* claim relates to the State's alleged failure to disclose additional dive records from the search of the Snake River for evidence of Anderson's murder. The district court held this claim was forfeited pursuant to I.C. § 19-4901(b) because it could have been raised on direct appeal and did not meet the statutory exception for forfeiture. The district court did not err.

Capone asserted in his post-conviction petition that additional dive records were not provided to him. However, like the excluded fingerprint report in *Thumm*, the absence of the dive records could have been the basis of a fundamental error claim on direct appeal. *Thumm*, 165 Idaho at 426, 447 P.3d at 874 (holding claim of prosecutorial misconduct that tangentially relied on excluded fingerprint report could have been raised on direct appeal, based on very exclusion of fingerprint report). Thus, because this claim could have been raised on direct appeal, unless Capone meets the statutory exception, the district court did not err in concluding the claim was forfeited for purposes of post-conviction.

Capone asserts that additional dive records would not have simply established, like the disclosed records, that no physical evidence of Anderson's murder was found. Instead, he argues the additional dive records *might* have provided something even more exculpatory, like a statement by investigators that, had Anderson been wrapped in tire chains and thrown in the river, they would have found this evidence. A petitioner's speculative conclusory assertions, unsupported by admissible evidence, are not sufficient to create a genuine issue of material fact. *See Roman*, 125 Idaho at 647, 873 P.2d at 901. In this case, Capone's petition and affidavit provided even less than conclusory allegations; Capone provided only speculation as to what the additional dive records might have stated. Capone's speculative statements do not even meet a prima facie evidentiary standard, let alone establish a substantial factual showing. To the extent additional dive records would have shown, as did the disclosed dive records, no physical evidence of Anderson's murder in the Snake River, the evidence would have been merely cumulative. "When nondisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs." *Grube*, 134 Idaho at 28, 995 P.2d at 798. Thus, Capone failed to show by way of substantial facts that the State withheld material, exculpatory dive records such that the claim casts substantial doubt upon the finding of his guilt.

As to the second prong of the forfeiture exemption, Capone provided no statements in his affidavit explaining why the claim could not have been raised earlier. As a result, the district court

did not err in finding this claim could have been raised on direct appeal. Because Capone failed to establish the statutory exception to forfeiture, the district court did not err in finding this claim was forfeited for purposes of post-conviction proceedings.

**B.     Capone's Argument Regarding Lack of Remedy**

In his reply brief, Capone claims that a petitioner has no remedy to overcome an unpreserved constitutional claim that requires development of the factual record because such a claim cannot be effectively raised either on direct appeal or in post-conviction. This is so, argues Capone, because the fundamental error test under *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010) requires a showing that the error be clear from the record. He further argues that the procedural bar set forth in I.C. § 19-4901(b) similarly precludes review:

> Appellant argues that at this point, after *Perry* (now *Miller et al*), the fundamental error avenue is blocked by the procedural threshold which now precludes appellate review of constitutional claims on either direct appeal or in a post-conviction. There is a difference between not being in an ideal procedural posture for direct appellate review and being categorically precluded from having an appellate court reach the merits of the claim because the procedural threshold cannot be met.

Capone's argument has been regularly rejected by Idaho's Supreme Court and Court of Appeals. *See Thumm*, 165 Idaho at 426, 447 P.3d at 874*; Baldwin*, 145 Idaho at 153 n.4, 177 P.3d at 367 n.4; *Black*, 165 Idaho at 104-05, 439 P.3d at 1276-77; *Grove*, 161 Idaho at 852, 392 P.3d at 30; *Bias v. State*, 159 Idaho 696, 702-03, 365 P.3d 1050, 1056-1057 (Ct. App. 2015). Capone could have raised all of his unobjected to allegations of constitutional violations as fundamental error on direct appeal. *See Grove*, 161 Idaho at 852, 392 P.3d at 30. Additionally, any of Capone's claims that were addressed in the underlying criminal case and were objected to, including challenges to Stone's credibility and issues surrounding Glass's prior record, could have been or were raised on direct appeal. Moreover, Capone could have raised all of his claims as claims of ineffective assistance of trial counsel in his petition for post-conviction relief for his trial counsel's failure to object to the prosecutor's conduct, *see Bias*, 159 Idaho at 703, 365 P.3d at 1057 (finding "the proper way for a defendant to challenge an unpreserved trial error is to assert ineffective assistance of trial counsel in a post-conviction proceeding") or for his appellate counsel's failure to raise the claims as fundamental error on appeal. *Mintun v. State*, 144 Idaho 656, 661, 168 P.3d 40, 45 (Ct. App. 2007) (holding it possible to bring ineffective assistance of appellate counsel for failure to raise particular claim in post-conviction proceeding). Finally, as set forth above, I.C. § 19-4901(b) provides an exception to the general forfeiture of claims that could have been raised

24

on direct appeal, but Capone failed to support his claims with substantial facts or present the district court with any evidence or argument to explain why the claims could not have been raised earlier. As a result, Capone has failed to show that any exception to the general forfeiture bar was applicable to any of his claims.

The district court did not err in concluding that Capone's prosecutorial misconduct claims could have been brought in his underlying criminal case and do not fall within the statutory exception to the general rule of forfeiture provided by I.C. § 19-4901(b). Accordingly, the district court did not err by finding that Capone forfeited his prosecutorial misconduct claims.

**C. The District Court Did Not Err in Summarily Dismissing Capone's Claims on the Merits**

As an alternative basis to finding the prosecutorial misconduct claims were forfeited pursuant to I.C. § 19-4901(b), the district court also found that each claim did not raise a genuine issue of material fact. The district court also found that Capone's ineffective assistance of counsel claim did not raise a genuine issue of material fact and therefore all of Capone's claims were subject to summary dismissal. Capone contends that the district court erred because each of these claims alleged a genuine issue of material fact such that they should not have been summarily dismissed. The State argues the district court did not err in finding the claims did not allege a genuine issue of material fact.

A petition for post-conviction relief must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf*, 152 Idaho at 67, 266 P.3d at 1172. "In the context of post-conviction relief, the applicant bears the burden not only to prove a constitutional violation, but also to demonstrate that he suffered some resulting prejudice that would entitle him to relief." *Nelson v. State*, 157 Idaho 847, 856, 340 P.3d 1163, 1172 (Ct. App. 2014).

**1. Capone failed to allege a genuine issue of material fact on any of his claims of prosecutorial misconduct**

As discussed above, Capone fails to allege a genuine issue of material fact for any of his prosecutorial misconduct claims. The statements in his affidavit were bare and conclusory because they were not supported by admissible evidence. Each claim is discussed above and need not be repeated here. For the reasons set forth above, Capone failed to allege a genuine issue of material fact regarding any of his prosecutorial misconduct claims. He similarly fails to allege a genuine issue of material fact that he suffered any prejudice. The district court did not err in finding that

25

Capone failed to allege a genuine issue of material fact as to any of his prosecutorial misconduct claims.

> **2.** **Capone failed to allege a genuine issue of material fact for his claim of ineffective assistance of trial counsel**

Capone asserts the district court erred in summarily dismissing his claim of ineffective assistance of trial counsel for failing to seek additional dive records related to the searches of the Snake River for Anderson's body or other physical evidence of the crime. Capone argues he alleged a genuine issue of material fact that trial counsel failed to adequately investigate the dive records and these records would have provided information that would have disproved Stone's story about the disposal of Anderson's body. In response, the State alleges the record conclusively shows trial counsel made a strategic decision not to request additional dive records and, as such, the district court did not err by summarily dismissing the claim.

A claim of ineffective assistance of counsel may properly be brought under the UPCPA. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. A reasonable probability of a different outcome is a probability sufficient to undermine confidence in the outcome. *State v. Dunlap*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013). This "requires a substantial, not just conceivable, likelihood of a different result." *Id.* (internal citations and quotations removed).

This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). Because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting

26

effects of hindsight," a petitioner seeking post-conviction relief for a claim of ineffective assistance of trial counsel must overcome the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689-90; *see also State v. Abdullah*, 158 Idaho 386, 418, 348 P.3d 1, 33 (2015). "Strategic decisions are virtually unchallengeable if made after a thorough investigation of law and facts relevant to plausible options . . . [and] decisions made after less than complete investigation are still reasonable to the extent reasonable professional judgments support the limitations on investigation." *Abdullah*, 158 Idaho at 418, 348 P.3d at 22 (internal quotations and citations removed).

Capone failed to demonstrate his trial counsel's decision was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. Capone's trial counsel attested in his affidavit that: (1) "one of our strategies at trial in Mr. Capone's case was to highlight the State not being able to locate any evidence to corroborate David Stone's testimony from their dives in the Snake River, including a body or tire chains"; (2) "the fact that the State did not locate any corroborating evidence in the river was positive to our defense and we did not want to change a positive fact by requesting more dive records and/or a hand-over-hand search of the river that might uncover inculpatory evidence"; and (3) "we further did not want to risk opening the door to evidence of the State's experiments with placing items in the river." Trial counsel's attestations demonstrate that trial counsel was aware that there may have been more dive records but did not wish to seek out those records in case they would be detrimental to Capone's case.

This reasoning demonstrates that Capone's trial counsel's decision to not seek additional dive records was the result of a trial strategy reached after careful consideration. Capone's arguments are attempts to analyze his trial counsel's performance with the benefits of both hindsight (as to his analysis of the strategy given the trial's ultimate outcome) and prognostication (as to his assumption of what additional dive records might have shown). Given the record, Capone cannot overcome the strong presumption that his trial counsel acted with reasonable professional judgment and, as such, cannot establish deficient performance under the first prong of an ineffective assistance of counsel claim.

Additionally, Capone did not raise a genuine issue of material fact that he was prejudiced by his trial counsel's decision not to seek additional dive records. Nowhere in Capone's third amended petition for post-conviction relief or accompanying affidavits does Capone allege with

27

any specificity how he was prejudiced by his trial counsel's failure to obtain additional dive records. Capone speculates that the additional dive records *might* provide evidence that had Anderson's body been thrown in the river with sixty pound steel tire chains, the chains would have been able to be recovered years later. Capone asserts trial counsel failed to investigate the dive records and the failure was critical to the outcome of the trial. However, Capone provides no evidence to support his assumption beyond his conclusory statements. Further, while Capone argues on appeal that further records and investigation "could have been used effectively to impeach Stone's body disposal story," he also acknowledges that it is unknown how material further dive records would be. This is especially true as, at best, any additional dive records would likely be cumulative evidence that no physical evidence of Anderson's murder was found in the Snake River. At worst, any additional dive records might have uncovered physical evidence of the murder or opened the door to allow the State to introduce evidence of its experiment in disposing of similarly weighted and wrapped evidence.

Without any evidence beyond Capone's speculative and conclusory assertions about what the additional dive records might have produced, Capone failed to allege a genuine issue of material fact that there was a substantial likelihood that the outcome of the trial would have been different. Because Capone cannot establish he was prejudiced by his counsel's failure to seek additional dive records, the district court did not err by finding Capone failed to allege a genuine issue of material fact as to either the deficient performance or prejudice prong of *Strickland*.

## IV.

### CONCLUSION

Capone's prosecutorial misconduct claims could have been raised on direct appeal and he failed to show by way of substantial evidence that any of the claims met the statutory exception to forfeiture. Even if reviewed on the merits, Capone failed to allege a genuine issue of material fact regarding any of the elements of his claims. The district court did not err, and the judgment summarily dismissing Capone's third amended petition for post-conviction relief is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.

28